# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 23-40821-EDK |
| ATHOL MEMORIAL HOSPITAL NMTC HOLDINGS, INC., | ) ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, ex rel. | ) | Adversary Proceeding |
| EDWARD C. RANDALL, JR., RELATOR, | ) | No. 25-04021 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HEYWOOD HEALTHCARE, INC. and | ) | |
| ATHOL MEMORIAL HOSPITAL,[1] | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## <u>MEMORANDUM OF DECISION</u>

Before the Court is a motion to dismiss (the "Motion to Dismiss") filed by Heywood

Healthcare, Inc. ("Heywood Healthcare") and Athol Memorial Hospital ("Athol Hospital"), the

defendants in this adversary proceeding (together, the "Defendants"), seeking dismissal of the

complaint (the "Complaint") brought by Edward C. Randall, Jr., acting as *qui tam* relator (the

"Relator") in this suit brought under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, (the "FCA").

---

[1] While the plaintiff designated Athol Memorial Hospital as "Athol Memorial Hospital, *Inc.*," the pleadings filed by Athol Memorial Hospital do not include the "Inc.," and the petition filed in the related main bankruptcy case, Case Number 23-40819, indicates that the correct name is "Athol Memorial Hospital."

1

I.       PROCEDURAL BACKGROUND AND JURISDICTION

In February 2023, the Relator filed the Complaint against the Defendants in the United States District Court for the District of Massachusetts alleging violations of the FCA.  *See* Civil Action No. 23-40018-MRG (D. Mass.).  The Complaint was filed under seal to permit the United States Department of Justice (the "United States") time to investigate and determine whether the United States would intervene, as is common in all *qui tam* actions under the FCA.  *See United States ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*, 142 F.4th 25, 31 (1st Cir. 2025).

In October 2023, while the Complaint was still under seal and the suit was unknown to the Defendants, the Defendants, together with other related debtors, filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*[2]  In May 2024, as the Chapter 11 cases progressed in the Bankruptcy Court, the United States filed a notice in the District Court declining to intervene.  In response, on June 3, 2024, the District Court entered an order noting that the United States had declined to intervene and unsealing the Complaint, the notice filed by the United States, the court's order, and any subsequent matters in the District Court suit.  Despite the unsealing of the Complaint in June 2024, the Relator did not serve the Complaint on the Defendants at that time.  Instead, in July 2024, and again in September 2024, the Relator sought (and was granted) extensions of time for service upon the Defendants.  In both motions, the Relator informed the District Court that the Defendants were debtors in pending Chapter 11 proceedings and that the automatic stay of 11 U.S.C. § 362(a) precluded service of the summonses on the Defendants.

---

[2] In October 2023, the related debtors, including the Defendants, were initially jointly administered under the lead case of Heywood Healthcare, Inc., Case No. 23-40817.  In September 2025, the Court entered an order designating Athol Memorial Hospital NMTC Holdings, Inc. ("NMTC Holdings"), Case No. 23-40821, as the lead case and consolidating all remaining matters in the jointly administered cases, including this adversary proceeding, to be resolved within the NMTC Holdings case.  The remaining cases have since been closed.

According to the Defendants, because they had never been served with the Complaint, they became aware of the *qui tam* action through "happenstance" in September 2024. They promptly filed a "Suggestion of Bankruptcy" in the District Court, and soon thereafter filed a "Motion to Refer and Transfer Case to the U.S. Bankruptcy Court for the District of Massachusetts." Finding that the Complaint fell within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334(b), the District Court granted the motion to transfer and transferred the Complaint to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and District of Massachusetts Local Rule 201.

The Defendants filed the Motion to Dismiss on September 29, 2025. The Complaint contains four counts; however, in the Relator's Objection to the Motion to Dismiss, the Relator did not object to the dismissal of Count II. Therefore, Count II will be dismissed and the Court will only address Counts I, III, and IV in this Memorandum.

## II.    FACTS AND POSITIONS OF THE PARTIES

### A.    Brief Background of the FCA and Medicare

"[T]he FCA was first enacted in 1863 to 'sto[p] the massive frauds perpetrated by large contractors during the Civil War.'" *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023) (second alteration in original) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016)). Today, the FCA "covers all fraudulent attempts to cause the Government to pay out sums of money," *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006) (quoting *United States v. Neifert–White Co.*, 390 U.S. 228, 232–33 (1968)), including those involving Medicare reimbursements. "The FCA permits private parties to bring lawsuits in the name of the United States — called *qui tam* lawsuits — against those who they believe have defrauded the Federal Government," *Schutte*, 598 U.S. at 743 (citing

3

31 U.S.C. § 3730(b)), which the Relator has done here.  Violations of the FCA may render a party "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).  And, if the United States does not proceed with the FCA claim, the individual bringing (or settling) the action, if successful, may be awarded an amount between 25 and 30 percent of the proceeds plus reasonable attorney fees and costs.  31 U.S.C. § 3730(d)(2).

> The Relator alleges that this FCA case is about the Defendants' fraud on Medicare.

> Title XVIII of the Social Security Act, commonly known as the Medicare Act, 42 U.S.C. § 1395 *et seq.*, establishes a program of health insurance for the elderly and disabled. Medicare Part A pays for inpatient hospital services and other limited institutional care. 42 U.S.C. § 1395c.  Medicare Part B is a voluntary supplemental program, 42 U.S.C. § 1395j, that covers medical and other health-care services, 42 U.S.C. § 1395k(a)(1) . . . .

*Willowood of Great Barrington, Inc. v. Sebelius*, 638 F. Supp. 2d 98, 104 (D. Mass. 2009).  "The Medicare Program is administered by the Centers for Medicare & Medicaid Services ('CMS')." *Id.*  "Generally, Medicare can reimburse medical providers for expenses incurred while providing services to patients." *United States ex rel. Omni Healthcare Inc. v. MD Spine Sols. LLC*, 160 F.4th 248, 252 (1st Cir. 2025) (citations omitted).  "To receive Medicare payments (including [applicable] adjustments), a Medicare provider submits cost reports to an intermediary at the end of each fiscal year.  The intermediary thereafter issues a notice of program reimbursement (NPR) specifying the amount the provider is owed in reimbursements and adjustments." *Maine Med. Ctr. v. Burwell*, 841 F.3d 10, 14 (1st Cir. 2016) (citations omitted).

**B.**     **Allegations in the Complaint**

Heywood Healthcare is an independent healthcare system and Athol Hospital, which is a member of Heywood Healthcare, is a critical access hospital accredited by CMS that provides

4

healthcare services to Medicare beneficiaries.

The Relator is a former employee of Heywood Healthcare who was hired in January 2017 as the Director of Reimbursement.  Among other responsibilities, he was responsible for filing the 2017 cost report filings,[3] including Athol Hospital's cost report form and worksheet.  With respect to the 2016 Medicare cost report for Athol Hospital, then-CFO Robert Crosby signed the report and an accounting firm, Baker Newman and Noyes ("BNN"), prepared the accompanying filings and filed the report in February 2017.  In the Complaint, the Relator states that "[t]he cost reports were submitted with reference to [] Athol Hospital's participation in Medicare Part A." Compl. ¶ 38.

According to the Complaint, the Relator was directed to review the cost report for 2016 and to estimate the settlement amount for 2017.  During that review, the Relator says, he analyzed the cost reports for 2014, 2015, and 2016.  According to the Relator, he "observed that Athol Hospital had paid approximately $440,000 in the form of an overpayment to the Medicare program over the prior 2 years and for FY2016 had received an underpayment due to Athol Hospital of approximately $775,000." *Id.* ¶ 41.  The Relator then concluded that "[t]he foregoing constituted a change in the Medicare Settlement . . . of approximately $1,200,000." *Id.*

The Relator asserts that he found an error in the 2016 cost report schedules and worksheet that resulted in Athol Hospital being paid twice for certain physician services (once under Medicare Part A and again under Medicare Part B).  According to the Complaint, when the Relator informed the CFO of the error and indicated that a reserve would need to be set up, the CFO responded "that the auditors were not doing reviews on an accurate and thorough basis and that

---

[3] All references to years in this Memorandum related to the cost reports or Medicare reporting periods are to fiscal years.

they would not be able to find the error." *Id.* ¶ 46.   After the termination of his employment with Heywood Healthcare, the Relator says he also notified BNN of the alleged error.

The Relator alleges that, despite being made aware of overpayments, "Athol wrongfully failed to self-report its receipt of overpayments," *id.* ¶ 51, that "[n]othing has been done by Heywood Healthcare or Athol Hospital to correct this cost report error whereby Athol Hospital received approximately $1,200,000 in inappropriate reimbursement," *id.* ¶ 52, and that "Athol Hospital [has not] corrected its false certifications that were included in their cost report filings," *id.*

Count I is brought against Athol Hospital pursuant to 31 U.S.C. § 3729(a)(1)(G) for knowingly concealing and knowingly and improperly avoiding or decreasing "an obligation to pay or transmit money or property to the Government by failing to repay Medicare overpayments to which it was not entitled." *Id.* ¶ 57.

Count III is brought against Heywood Healthcare and Athol Hospital pursuant to 31 U.S.C. § 3729(a)(1)(A) for "knowingly presenting and causing the presentment of false or fraudulent claims for payment or approval resulting in inflated Medicare reimbursements to which it was not entitled." *Id.* ¶ 65.

Count IV is brought against Athol Hospital pursuant to 31 U.S.C. § 3729(a)(1)(B) for "knowingly making, using, and causing to be made or used, false records and statements material to false or fraudulent claims resulting in inflated Medicare reimbursements to which it was not entitled." *Id.* ¶ 69.

Curiously, for reasons unexplained, Counts I and IV of the Complaint were brought against Athol Hospital, Count III of the Complaint was brought against both named Defendants, and in the "relief requested" section of the Complaint, the Relator asks that judgment be entered against

only Athol Hospital.  For ease of reference, and because it is not material to the outcome of the Motion to Dismiss, this Memorandum will discuss the counts in the Complaint as though they were brought against both Defendants.

### C.  Positions of the Parties

#### 1.  The Defendants

The Defendants have moved to dismiss the Complaint on several grounds.  Generally, the Defendants contend that the Complaint fails to plead any plausible claim pursuant to Federal Rule of Civil Procedure ("Federal Rule") 8 and fails to plead the fraud claims with particularity, as required by Federal Rule 9(b).  In support of those contentions, the Defendants raise a bevy of arguments attacking the lack of specificity in the Complaint and the legal conclusions the Relator has drawn from the facts asserted in the Complaint.  The salient points are summarized below.

First, the Defendants note that the Relator was not involved in, or responsible for, preparing the 2014-2016 cost reports that the Relator alleges resulted in Athol Hospital's receipt of overpayments, that there is no allegation of any fraud or malfeasance by BNN in connection with its preparation of the 2016 cost report, and that there is no allegation that either of the Defendants withheld any information or provided inaccurate information to BNN in connection with the 2016 report.  The Defendants further complain that the Relator fails to identify who instructed him to review the 2014-2016 reports, the reason for reviewing those reports, or the type of analysis performed.  In addition, the Defendants note that the Relator did not communicate with anyone from BNN during the review process or discuss the reports with anyone involved in their preparation, but instead notified BNN after he left his employment at Heywood Hospital.

The Defendants assert that the allegation in the Complaint that Athol Hospital paid approximately $440,000 in overpayments in two (unidentified) years confirms that Medicare

received repayment of the overpayment to which it was entitled; therefore, no further payment is required. And, with respect to the referenced $775,000 amount, the Defendants say that the Relator has admitted that Medicare owed Athol Hospital for provided services for 2016. The Defendants next argue that the alleged "change" of "approximately $1,200,000," presumably drawn from those two figures, is illogical and there is no explanation of how the Relator arrived at this number. With regard to the alleged errors involving physician services charges, the Defendants note that no specific information with regard to those charges was included in the Complaint, that the document(s) containing the alleged erroneous charges were not attached to the Complaint, and that the cost report instruction on which the Relator relies is mischaracterized.

The Defendants also emphasize the lack of any detail regarding the reporting of the alleged error to the CFO, noting that the Relator has failed to provide details regarding that discussion (or discussions), has failed to allege that his advice for setting up a reserve was not heeded, and has failed to demonstrate that his advice was sound. Furthermore, the Defendants say that Medicare has not notified the Defendants of an overpayment or requested that any overpayment be repaid.

Addressing Counts I and II (the "reverse false claims") together, the Defendants treat both as having the same elements under 31 U.S.C. § 3729(a)(1)(G). Starting from that (incorrect) statutory reading, the Defendants say that the Relator has failed to allege facts to support the elements required to establish such a claim. Namely, the Defendants argue that the Relator has failed to include facts indicating that a false record was created, that the Defendants knew it was false, that the Defendants owed an obligation to the government at the time the 2016 cost report was submitted, that any obligation to repay was concealed, and that any alleged misrepresentation was material. Further relying on the (incorrect) presupposition that the Relator's claim under Count I (as opposed to Count II) requires proof that the Defendants owed an obligation to the

government at the time the Defendants made a "false statement" in the 2016 cost report, the Defendants emphasize that the government had yet to pay Athol Hospital at the time the 2016 cost report was filed.  The Defendants also argue that Count I cannot be maintained because it is redundant of the claims brought under Counts III and IV.

With respect to Counts III and IV, brought under 31 U.S.C. §§ 3729(a)(1)(A) and (B), respectively, the Defendants argue that the claims must fail because the Complaint fails to allege facts to suggest that the Defendants had knowledge that they were seeking any improper overpayment at the time the 2016 cost report was submitted or had knowledge of the falsity of any records or statements related to the 2016 cost report, as required by those sections.  The Defendants argue that the Relator lacks any requisite personal knowledge of the relevant facts, presumably for two reasons: (1) the Relator could not have personal knowledge of the facts surrounding the filing of the 2016 cost report because the Relator was not involved in the preparation of the 2016 cost report, and (2) the Relator did not speak with BNN to determine its knowledge or the information used to prepare the 2016 cost report when the report was filed.

The Defendants also question the constitutionality of the FCA's *qui tam* provisions as usurping presidential powers under Article II of the United States Constitution, arguing that a private citizen does not have the authority to represent the United States.  However, the Defendants acknowledge that the Court of Appeals for the First Circuit implicitly recognized the constitutionality of the FCA's *qui tam* provisions as recently as 2020, citing to *United States ex rel. Concilio De Salud Integral De Loíza, Inc. v. J.C. Remodeling, Inc.*, 962 F.3d 34, 38 n.2 (1st Cir. 2020).

Finally, the Defendants submit that the Relator's claims should be barred based on the Relator's failure to timely file a proof of claim in the bankruptcy case, instead opting — without

providing notice of the Complaint to the Defendants — to wait until the bankruptcy case was concluded before pursuing the Relator's claims. According to the Defendants, the Relator has thus forfeited the asserted claims.

2.      The Relator

The Relator argues that the Complaint contains sufficient factual allegations to plead the claims with particularity as required by Federal Rule (b)(9), especially with regard to the Defendants' knowledge, because a party may be found to act with knowledge by deliberately ignoring the falsity of the information or acting with deliberate indifference with regard to the "double-billed" physician charges. By including non-reimbursable charges for physician services in their cost report, either with actual knowledge or with deliberate indifference, the Relator argues that the "Defendants fraudulently induced Medicare to reimburse them for non-allowable charges." Pl.'s Obj., Dkt. 41, at 10 (citations omitted). The Relator also says that the false claim was material, because it affected the amount reimbursed. That materiality is further bolstered, according to the Relator, based on the allegation that the Defendants received $1,200,000 in overpayments from Medicare.

As to the "time, place, and content" requirements of Federal Rule 9(b), the Relator argues that those requirements have been satisfied by the allegations related to the filing of the 2016 cost report in February 2017, the identification of the persons involved with preparing and signing the cost report, and the description of the "approximately $440,000 in fraudulent overpayments to Medicare and approximately $775,000 in fraudulent underpayments from Medicare." *Id.* at 13.

Regarding the "reverse false claims," the Relator also maintains that the Complaint passes muster under Federal Rule 9(b) because the Relator adequately pled an "obligation" owed by the Defendants, alleged that he identified an overpayment, stated that he notified the Defendants of

10

that overpayment in the third quarter of 2017, and alleged that the Defendants knowingly avoided their obligation to repay Medicare for the overpayment and retained funds owed to the government.

In response to the Defendants' argument that Count I is improperly duplicative of Counts III and IV, the Relator says that the reverse false claims do not depend on the Defendants' violation of the FCA, but on the Defendants' failure to comply with the obligation to return overpayments to the government, and that failure to comply is separate and apart from the direct false claims violations.

Unsurprisingly, the Relator also disputes any argument that the provisions of the FCA permitting a private relator to litigate claims on behalf of the United States are unconstitutional, arguing that the Supreme Court's decision in *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000), forecloses such an argument and noting that multiple courts of appeals, including the First Circuit, have rejected such an argument.

With regard to the Defendant's assertion that the Relator's claims are barred due to the failure to file a claim in the underlying bankruptcy case, the Relator notes that Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3003(c)(2) provides only that a creditor that fails to file a proof of claim cannot participate in plan confirmation and has no right to any distribution under the plan. The Relator contends he is not seeking distribution under the debtors' confirmed plan. He further argues that the present claims are not barred, despite the Relator's failure to file a proof of claim, because, as claims for fraud within the meaning of 11 U.S.C. § 523(a)(2)(A), the claims are excepted from discharge pursuant to 11 U.S.C. § 1141(d)(6)(A) and that exception is self-executing.

Finally, the Relator argues in the alternative that the Relator should be permitted to amend the Complaint pursuant to the policy of liberally granting leave to amend embodied in Federal

11

Rule 15(a)(2), as such an amendment would not unduly delay the proceedings, would not be futile, and would be made in good faith.[4]

III.   <u>DISCUSSION</u>

### A.   Legal Standard

In evaluating a motion to dismiss under Federal Rule 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), the Court must determine whether the Complaint contains "a short and plain statement," Fed. R. Civ. P. 8(a)(2), alleging sufficient "facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In addition, because the FCA requires proof of fraud, the provisions of Federal Rule 9(b) also apply.  Federal Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Generally, there are three purposes behind Rule 9(b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987) (citations omitted).  The First Circuit has reiterated that "relators are required to set forth with particularity the who, what, when, where, and how of the alleged fraud." *Lawton ex rel. United States v. Takeda Pharm. Co., Ltd.*, 842 F.3d 125, 130 (1st

---

[4] The Relator also raises arguments in support of the contention that the Relator has met the requirement of 31 U.S.C. §§ 3730(e)(4)(A) and (B) to establish the Court's jurisdiction over the claims because the allegations in the Complaint are not based on information obtained through public disclosure, but through the Relator's independent knowledge gained through a review of the Defendants' cost reports as an employee. However, the Defendants have not argued that the Court lacks jurisdiction based on that section.

Cir. 2016) (quotation and citations omitted). "Thus, Rule 9(b) requires both that the circumstances of the alleged fraud and the claims themselves be alleged with particularity." *Id.* (citation omitted).

A complaint under the FCA may satisfy the requirements of Rule 9(b) by "[p]roviding exact billing data — name, date, amount, and services rendered — or attaching a representative sample claim." *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014) (citations omitted). "A relator can also provide the required indicia of reliability by showing that he personally was in a position to know that actual false claims were submitted to the government and had a factual basis for his alleged personal knowledge." *Id*. at 707 (citations omitted). Or, as characterized by another court, a relator "may survive a motion to dismiss by alleging 'particular details of a scheme . . . paired with reliable indicia that lead to a strong inference that' [d]efendants actually violated the FCA." *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 632-33 (N.D. Tex. 2018) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2014)), *aff'd*, 779 F. App'x 250 (5th Cir. 2019).

Furthermore, while the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff]'s favor," *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023) (alteration in original) (quoting *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022)), the Court "credit[s] neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," *id.* (quoting *Legal Sea Foods*, 36 F.4th at 33).

B.     <u>Count I: Retention of Overpayments; Violation of the False Claims Act – 31 U.S.C. § 3729(a)(1)(G)</u>

Section 3729(a)(1)(G) of the FCA provides liability for:

any person who —

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or **knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . . .**

31 U.S.C. § 3729(a)(1)(G) (emphasis added).

This provision of the FCA is called a "reverse false claim" because § 3719(a)(1)(G) "requires a relator to allege facts that show defendants received overpayments from the government and failed to refund those payments." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 916 (6th Cir. 2017) (citing 31 U.S.C. § 3729(a)(1)(G)) (further citation omitted). "The reverse false claims provision . . . imposes liability where a defendant concealed its obligation to return payments." *Hendrickson*, 343 F. Supp. 3d at 632 (citations omitted).

Section 3719(a)(1)(G) "provides both a false-record and fraudulent-concealment provision applicable to reverse false claims." *United States ex rel. Ligai v. ETS-Lindgren Inc.*, Civil Action No. H-112973, 2014 WL 4649885, at *12 (S.D. Tex. Sept. 16, 2014), *aff'd sub nom. United States ex rel. Ligai v. ESCO Techs., Inc.*, 611 F. App'x 219 (5th Cir. 2015). The reverse false claim allegation in Count I does not involve the creation of a false record; instead, it relates to the second prong of the statute emphasized above, the "fraudulent-concealment" provision. For Count I to survive the motion to dismiss, then, the Complaint must allege facts that demonstrate that (1) the Defendants had an obligation to pay or transmit money to the government, and (2) the Defendants knowingly concealed or knowingly and improperly avoided or decreased that obligation. 31 U.S.C. § 3729(a)(1)(G).

An "obligation" under the FCA "means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any

14

overpayment . . . ." 31 U.S.C. § 3729(b)(3). Here, the "obligation" relied on by the Relator is an obligation established by statute, namely 42 U.S.C. § 1320a-7k.

The Defendants, as providers of services participating in the Medicare program, are subject to 42 U.S.C. § 1320a-7k, which "prohibit[s] retention of Government overpayments in the healthcare context." *Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d. 370, 381 (S.D.N.Y. 2015) (citations omitted). An "overpayment" under the FCA "means any funds that a person receives or retains under [Medicare and Medicaid] to which the person, after applicable reconciliation, is not entitled under [Medicare and Medicaid]. 42 U.S.C. § 1320a-7k(d)(4)(B). If a person has received an overpayment, they must report and return the payment by the later of sixty days after the date the overpayment was identified or the date any corresponding cost report is due, if applicable. 42 U.S.C. § 1320a-7k(d)(2). Any overpayment retained after the sixty-day deadline is an "obligation" to pay money to the government for purposes of the FCA. 42 U.S.C. § 1320a-7k(d)(3); *see also* 31 U.S.C. § 3729(b)(3) (defining obligation).

In support of the Relator's opposition to the Motion to Dismiss, the Relator suggests that the facts in *Kane* are analogous to the facts here. In *Kane,* auditors from the New York State Comptroller's office discovered a software glitch that caused codes to incorrectly appear on statements to providers that resulted in overpayments to a network of non-profit hospitals. 120 F. Supp. 3d. at 375–76. The relator, while employed by the company coordinating and operating the hospital defendants, was tasked with ascertaining which claims were improperly billed to Medicaid. *Id.* at 377. The relator sent an email to several members of management with a spreadsheet that he claimed identified over 900 erroneous claims, causing an overpayment in excess of $1,000,000. *Id.* Four days after the email and spreadsheet were sent, the relator was terminated. *Id.* The relator then brought suit under the FCA and related state laws, and the United

15

States elected to intervene. *Id.* at 375. Attached to the intervenor complaint filed by the United States was the list of erroneous claims submitted by the hospitals as a result of the software glitch and the relator's email with the spreadsheet. *Id.* at 378-379. Ultimately, the court denied the defendants' motion to dismiss the United States' intervenor complaint. *Id.* at 400.

Here, the Relator asserts that, as in *Kane,* he has adequately alleged that he identified an overpayment (and notified the Defendants of the overpayment during the third quarter of 2017), which would establish that the Defendants had an "obligation" within the meaning of the FCA. In support of the argument that the Defendants were overpaid by the government, the Relator relies on alleged errors in the 2016 cost report. However, unlike in *Kane,* where there was clear evidence of overpayment (i.e., the overpayments were identified by the New York State Comptroller's audit and the exhibits attached to the complaint allowed the court to evaluate the list of erroneous claims and the contents of the email sent by the relator), here, the Relator not only failed to provide any concrete examples of alleged inaccuracies in the cost report, but the Relator failed to attach *any* exhibits to the Complaint. Furthermore, the Complaint never reveals the names of the physicians or the dates of services for which any alleged overpayment was made.

Instead, the Relator only alleges generally that he "observed during his review of the schedules attributable to the Medicare Cost Report Settlement for Athol Hospital that [BNN] had included non-reimbursable physician charges." Compl. ¶ 42. Both parties agree that BNN prepared the filings accompanying the 2016 cost report, and the Relator says that those responsibilities "includ[ed] the establishment of the Home Office Cost Report in FY2016." *Id.* ¶ 37. A "Home Office Cost Report" is not defined in the Complaint, and it is unclear whether the Relator reviewed that document or the importance of that particular document. As argued by the Defendants, and fairly inferred from the Complaint, the Relator did not confer with BNN regarding

16

the 2016 cost report at the time of the Relator's review, stating only that he "also notified" BNN after his employment was terminated. *Id.* ¶ 47. There is no discussion of what is meant by "also notified" and no indication of exactly when any such notification took place.

More specifically, in paragraphs 42 and 43 of the Complaint, the Relator states that the relevant cost report inappropriately included non-reimbursable physician charges on Worksheet D Part V, lines 93-98. In support of that assertion, the Relator quotes the following instruction from the Medicare Cost Reporting Instructions: "**[i]f the amounts on Worksheet D, Part V include charges for professional services, eliminate the amount of the professional component from the charges entered on line 12. Submit a schedule showing these computations with the cost report.**" *Id.* ¶ 42. The Relator then concludes that if the "inappropriate charges" were removed from lines 93-98, "the settlement amount would be in line with prior year filing periods, and Schedule S-2 Settlement Summary would accurately reflect a Medicare overpayment due to the Medicare Program of approximately $440K." *Id.* ¶ 43.

But the reliance on that instruction is misplaced and does not sufficiently allege any specific error giving rise to an overpayment to the Defendants. As the Defendants point out, the plain language of the quoted instruction does not require the preparer to remove charges for professional services from lines 93-98 of the worksheet, but to instead remove an amount from line 12 and submit a schedule with the cost report. Furthermore, as the Defendants also point out, the reference to "in line with prior year filings" is unintelligible considering the inconsistencies in paragraph 41 of the Complaint referencing the amounts of overpayments and underpayments for 2014-2016.

The conclusory allegation in paragraph 44 of the Complaint that "Athol was paid twice for the physician services once under Medicare Part A and again under Medicare Part B, thus inappropriately receiving duplicative payments" likewise lacks any specificity and references

17

Medicare Part B without explanation, even though the Relator does not otherwise reference cost reports submitted regarding Medicare Part B or indicate in the Complaint that he reviewed the cost reports submitted with regard to Medicare Part B. *See id.* ¶ 38 (indicating that the referenced cost reports "were submitted with reference to Athol Hospital's participation in Medicare Part A").

Most importantly, however, although the Relator asserts, in conclusory fashion, that the Defendants were required to return an overpayment at the time the Relator told the CFO of the 2016 cost report error, the Relator can only plead an obligation to return an overpayment to the government if the facts of the Complaint establish that the Defendants improperly *received* an overpayment in the first place.[5]

The Relator generally alleges that because of the "cost report error, Athol *was paid twice* for the physician services . . . thus inappropriately *receiving* duplicative payments." *Id.* ¶ 44 (emphasis added). The Complaint also alleges that when the Relator told the CFO of the error during the third quarter of Athol Hospital's 2017 fiscal year, he stated "that Athol Hospital would *need to accrue for a payment* to the Medicare program" for 2016 and 2017 by setting up a reserve as soon as possible. *Id.* ¶ 45 (emphasis added). Later in the Complaint, the Relator alleges that although he made the "CFO aware of the *overpayments* during the [third] quarter of 2017, Athol [Hospital] wrongfully failed to self-report its receipt of overpayments within 60 days of" the Relator's disclosure of this error to the CFO. *Id.* ¶ 51 (emphasis added) (citing 42 U.S.C. § 1320a-7k(a)(1)(A)(d)(2)).

Despite the advice to set up a reserve on the one hand, and highlighting the statutory

---

[5] The Court notes that the Complaint also alleges that "Athol [Hospital] wrongfully failed to self-report its receipt of overpayments within 60 days of said notice." Compl. ¶ 51. While 42 U.S.C. § 1320a-7k(d)(2) requires an overpayment to be both reported and returned, it is only the retention of an overpayment, and not the failure to report, that is considered an "obligation" under the FCA. 42 U.S.C. § 1320a-7k(d)(3). Thus, even if the Defendants or the CFO failed to report an error on the 2016 cost report, that failure to report alone would not violate the FCA.

requirement to self-report within 60 days on the other, by using the terms "paid," "received," "accrue for a payment," and "overpayments," this Court may infer that at the time the Relator spoke to the CFO about this alleged error, the Relator believed Athol Hospital had received overpayments from the government to which the Relator alleges the hospital was not entitled. **But the Relator does not set forth a date (or dates) that either Defendant actually received any overpayments.** And the Complaint itself is internally inconsistent with regard to specific allegations of an overpayment. In paragraph 43, the Relator claims that the overpayment was approximately "$440K," (without providing any detail as to how that amount was calculated), but then alleges in paragraph 52 that the overpayment was approximately $1,200,000.

Furthermore, and most telling, the Relator says in paragraph 41 that his review of the 2014-2016 reports revealed that Athol Hospital *had paid* Medicare a total of $440,000 for 2014 and 2015 "in the form of an overpayment due" to Medicare and that Athol Hospital "had received an underpayment" of $775,000 from Medicare for 2016. *Id.* ¶ 41. In the Relator's objection, the Relator characterizes paragraph 41 as alleging that the Defendants received $1,200,000 in overpayments from Medicare. Despite that characterization, while paragraph 41 says that the overpayment to Medicare and underpayment due to Athol "constituted a change in the Medicare Settlement on S-2 Certification page of approximately $1,200,000," it simply does not say that Athol Hospital received an overpayment of $1,200,000. And, when pressed at oral argument, counsel for the Relator was unable to explain the intended meaning of the representations in paragraph 41 or how those representations formed the basis for the conclusion in paragraph 51. Accordingly, the later allegation in paragraph 51 that Athol Hospital received approximately $1,200,000 in inappropriate reimbursements, which would constitute an overpayment, is a conclusion that is not supported by the facts in the Complaint.

For these reasons, the Complaint "lacks both particular details and reliable indicia" that would lead to a "strong inference" that the Defendants owed an obligation to pay or transmit money to the government based on overpayments caused by errors in the 2016 cost report, *Hendrickson*, 343 F. Supp. 3d at 632, and does not adequately place the Defendants on notice and enable them to prepare meaningful responses, *Becher*, 829 F.2d at 289. Because the Complaint fails to sufficiently plead the existence of "an obligation to pay or transmit money or property to the Government" as required by 31 U.S.C. § 3729(a)(1)(G), Count I will be dismissed with prejudice.

**C. <u>Count III</u>: Presentation of False or Fraudulent Claims; Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A) and <u>Count IV</u>: False or Fraudulent Records and Statements Material to False or Fraudulent Claims; Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(B)**

Section 3729(a)(1)(A) of the FCA provides liability for "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . ." 31 U.S.C. § 3729(a)(1)(A). To establish liability under § 3729(a)(1)(A), a plaintiff must show "that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Mikes v. Straus,* 274 F.3d 687, 695 (2d Cir. 2001), *abrogated on other grounds by Escobar*, 579 U.S. 176.

Section 3729(a)(1)(B) provides liability for "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ." 31 U.S.C. § 3729(a)(1)(B).

> A lawsuit brought under section 3729(a)(1)(B) . . . is "complementary" to a count brought under section 3729(a)(1)(A), because subsection (a)(1)(B) is "designed to prevent those who make false records or statements [in order] to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval."

*Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 87 (D.D.C. 2014) (quoting *United States*

20

*ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 501 (D.C. Cir. 2004)).  "Reflecting this, the elements for a count brought under section 3729(a)(1)(B) are practically identical to the requirements for a count brought under section 3729(a)(1)(A)."  *Id.* (citing *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 36 (D.D.C. 2010)).

"The FCA does not require a specific intent to defraud and defines 'knowingly' as either: (1) possessing 'actual knowledge'; (2) acting in 'deliberate ignorance' of the truth or falsity of the information; or (3) acting in 'reckless disregard' of the truth or falsity of the information.  *See* 31 U.S.C. § 3729(b)(1)."  *United States v. Huron Consulting Grp., Inc.*, 929 F. Supp. 2d 245, 251–52 (S.D.N.Y. 2013), *aff'd sub nom. Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 567 F. App'x 44 (2d Cir. 2014) (summary order).

In support of Counts III and IV, the Relator relies on the court's analysis in *United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008), in arguing, among other things, that the Defendants acted "knowingly" in presenting or causing the presentment of false or fraudulent claims. Although *Bourseau* involved the prior version of the "reverse false claim" provision of 31 U.S.C. § 3729(a)(7), now 31 U.S.C. § 3729(a)(1)(G), the *Bourseau* court applied the same definition of "knowing" and "knowingly" set forth in the FCA that applies to claims brought pursuant to 31 U.S.C. §§ 3729(a)(1)(A) and (B).

In *Bourseau*, one defendant argued that he did not "knowingly" include false statements in a Medicare cost report.  531 F.3d at 1167.  The court found that the inclusion of certain costs in the report was made with knowledge of its falsity or, at the very least, made with reckless disregard of the truth, reasoning that the defendant included costs that were not actually paid, costs unrelated to Medicare patient care, and expenses that never existed and also reported costs in the wrong portion of the report (resulting in a higher reimbursement), all matters of which the defendant

21

would have had personal knowledge. *Id.* at 1167–68. Importantly, prior to the submission of the report, the defendants in *Bourseau* had been advised that the offending costs would be improper to include and chose to include those items anyway. *Id.* at 1163. The Relator argues that here, "like the defendants in *Bourseau*, Defendants failed to engage in a limited inquiry to ensure that the information submitted in their cost report was correct," and asserts that "[b]y including non-reimbursable physician charges in their cost reports, Defendants fraudulently induced Medicare to reimburse them for non-allowable charges." Pl.'s Obj. at 10.

But the facts here are easily distinguishable from *Bourseau*. As highlighted by the Defendants, the Relator acknowledges that the Defendants' "obligation did not actually begin until Defendants were notified by Relator that they received an overpayment . . . ." *Id.* at 17. The Relator has not alleged that BNN or the CFO knew they were submitting a false cost report, or that they intentionally submitted duplicate physician charges in the 2016 cost report. Notwithstanding the absence of such an allegation, the Relator maintains that, even if they did not have actual knowledge of the allegedly inaccurate cost report, the Defendants' failure to ascertain the accuracy of the cost report rises to a level of deliberate indifference, subjecting the Defendants to liability under the FCA. However, even if the Defendants included inappropriate costs or improperly submitted duplicative costs in the 2016 cost report, the Relator has failed to allege any facts to suggest that the Defendants knew of any falsity, or acted with the sort of reckless disregard of truth or falsity, *at the time of the presentment* as was present in the *Bourseau* case. In fact, the Complaint says nothing at all about the Defendants' knowledge at the time the report was submitted.

While the Relator tries to save the claims by asserting that the Defendants' "argument, at best, raises factual questions that cannot be resolved at this procedural juncture," *id.* at 10, the lack of any relevant facts in the Complaint is fatal to Counts III and IV. "Rule 9(b) requires both that

the circumstances of the alleged fraud and the claims themselves be alleged with particularity." *Lawton*, 842 F.3d at 130 (citation omitted). Rather than leave factual averments for another day, it was incumbent on the Relator to include allegations, if they existed, that met all the requirements for liability (particularly the knowledge requirements) under §§ 3729(a)(1)(A) and (B) of the FCA.

Because the Complaint fails to allege any facts, let alone facts with particularity, to support a finding that the Defendants knowingly presented or knowingly made a false claim under §§ 3729(a)(1)(A) and (B), Counts III and IV will be dismissed with prejudice.

### D.      Relator's Request to Amend the Complaint

In the Relator's opposition, the Relator requests that this Court permit the Relator to amend the Complaint, citing to Federal Rule 15(a)(2), made applicable by Bankruptcy Rule 7015, which provides that the Court should freely grant leave to amend "when justice requires" absent a showing of undue delay, bad faith, repeated failure to cure deficiencies, or futility of amendment. *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) (citations omitted), *overruled on other grounds by Allison Engine v. United States ex rel. Sanders*, 553 U.S. 662 (2008). The basis for the Relator's request is that granting leave to amend would provide an opportunity to cure pleading deficiencies, and the Relator emphasizes that this is the first request to amend.

However, after receiving the Defendants' Motion to Dismiss, the Relator could have requested leave to amend but did not. Undue delay in proactively moving to amend can provide a court with adequate grounds to deny leave. *Flanagan,* 142 F.4th at 38 (citation omitted). The First Circuit has "explicitly condemned a wait and see approach to pleading, whereby plaintiffs having the needed information, deliberately wait in the wings with another amendment to a complaint should the court hold the first amended complaint was insufficient." *Id.* (quoting *Kader*

23

*v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018)).   Further, courts regularly deny leave to amend where a plaintiff has "failed to attach a proposed amended complaint or articulate the basis for amendment." *Lan Glob., Inc. v. Alchemy Telco Sol., US, LLC*, Civil Action No. 22-CV-11732-AK, 2023 WL 5978296, at *15 (D. Mass. July 6, 2023) (citations omitted), *report and recommendation adopted*, Civil Action No. 22-CV-11732-AK, 2023 WL 5978297 (D. Mass. Aug. 25, 2023).

In the summary request for leave to amend, the Relator did not provide any additional facts that would be included in an amended complaint to cure any deficiency, and the Relator failed to attach a proposed amended complaint to demonstrate that amendment would not be futile.  Without a proposed amended complaint to consider, this Court cannot evaluate the merits of any amendment and must conclude that granting leave to amend would be futile.  *See, e.g.*, *Lan*, 2023 WL 5978296, at *16 (concluding amendment would be futile where plaintiff "has not even articulated what it would change about its complaint" but instead requests "an open-ended invitation to amend its complaint in some unspecified way"); *Newman v. Metro. Life. Ins. Co.*, Civil Action No. 12-100878-DJC, 2013 WL 951779, at *9 (D. Mass. Mar. 8, 2013) (denying leave to amend where plaintiff "failed to provide a proposed amended complaint or articulate the basis for" amendment).  Accordingly, the request for leave to file an amended complaint will be denied.


IV.    CONCLUSION

For all the foregoing reasons, the Motion to Dismiss will be GRANTED and the Relator's request to for leave to file an amended complaint will be denied.  Because the Complaint will be dismissed for the reasons set forth herein, this Court will not address the Defendants' alternative arguments that the Relator's claims are barred for failure to file a proof of claim in the main case

or that the FCA's *qui tam* provisions violate the Appointments Clause of Article II of the U.S.

Constitution.

A separate order in conformity with this Memorandum will issue forthwith.

DATED: April 22, 2026                    By the Court,

_____

Elizabeth D. Katz
United States Bankruptcy Judge